UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **98 - 7322** **CIV - LENARD**

MAGISTRATE JUDGE
JOHNSON

CITRIX SYSTEMS, INC.,

         Plaintiff,

v.

GRAPHON CORPORATION,

         Defendant.

_____/

## COMPLAINT

The Plaintiff Citrix Systems, Inc. ("Citrix"), by and through its attorneys, alleges as follows against the Defendant GraphOn Corporation ("GraphOn"), said allegations made upon information and belief except those as to Citrix:

### THE PARTIES

1.    Citrix is a Delaware corporation with a principal place of business in Fort Lauderdale, Florida. Citrix is engaged in the development, manufacture, and



sale of computer networking software, including "thin client" software for adding multi-user capability to a single network operating system.

2.      Citrix brings this action under the copyright laws of the United States, 17 U.S.C. §§ 501 et seq., under the California Uniform Trade Secrets Act, C.C. 3426 et seq. and under 28 U.S.C. §§ 2201 and 2202.

3.      GraphOn is a California corporation with a principal place of business in Campbell, California, that is engaged in the development, manufacture, and sale of computer networking software for use with thin clients.  GraphOn operates, conducts, engages in, and carries on the marketing, sale, distribution, and servicing of its products throughout the United States and the world.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338, and 17 U.S.C. §§ 501 et seq., and under 28 U.S.C. § 1367 and the principles of supplemental and pendent jurisdiction.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over the defendant under the Florida's long-arm statute, §§ 48.193(1)(a) and 48.193(2).  Citrix's claim arises out of GraphOn's operating, conducting, engaging in, or carrying on a business or business venture in Florida.  GraphOn's activities in Florida show a general course of business activity in Florida for pecuniary benefit, including without limitation, having sold its system to numerous corporations in Florida and having directed communications to Florida as set forth herein.  GraphOn's activities in Florida are

2

substantial and not isolated.  Furthermore, GraphOn's activities in Florida are such that the bringing of this action against it in Florida is consistent with due process requirements.  Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

6.    This Court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.  This action is based upon an actual controversy, and Citrix is in reasonable apprehension of a lawsuit regarding GraphOn's purported intellectual property rights in copyrighted software.

NATURE OF THE CLAIM

7.    The origins of this dispute arose in late 1996 when Insignia Solutions, Inc. and its United Kingdom parent, Insignia Solutions plc, (collectively "Insignia"), companies also engaged in the development of computer networking software and certain of whose assets Citrix has since acquired, explored the possibility of acquiring GraphOn or entering into a business relationship with GraphOn. The 1996 discussions between Insignia and GraphOn were cooperative, and in October 1996 the parties entered into a Technology Collaboration Agreement ("Technology Agreement") concerning their cooperation.  The Technology Agreement authorized personnel from GraphOn and Insignia to explore potential development, marketing, and sale of various products and technologies and to disclose to each other certain existing technologies from their respective corporations.  A copy of the Technology Agreement is attached as Exhibit A.

8.    Following execution of the Technology Agreement, on November 4, 1996 representatives from Insignia met with GraphOn personnel.  Insignia

3

representatives did not take any documentation, recorded data, or software code from GraphOn's premises.

9.     After evaluating the information GraphOn provided to Insignia, Insignia concluded that GraphOn's technology was not a desirable addition to Insignia's technology and decided not to continue considering acquisition of GraphOn or entering into a business relationship with GraphOn.  Instead, Insignia decided to continue working on developing Insignia's own technology.

10.     Although Insignia ultimately did not acquire GraphOn, the discussions and evaluation process involving the two companies ended amicably.

11.     For over a year after the conclusion of the acquisition talks, GraphOn never once communicated to Insignia that GraphOn believed that there had been a breach of any provision of the Technology Agreement.

12.     On January 12, 1998, Insignia publicly announced that it had signed an agreement under which Citrix would purchase certain of Insignia's assets related to Insignia's "NTRIGUE" software technology.

13.     It was only after this public announcement that GraphOn first alleged breach by Insignia of the Technology Agreement.  In a letter to Insignia, dated January 26, 1998 (the "January 1998 Letter"), at pages 2 and 3, GraphOn's counsel stated:

> Despite Insignia's agreement and assurances to GraphOn,
> it has recently come to GraphOn's attention that Insignia
> has incorporated into its existing and potential products
> critical features strikingly similar to those sold and
> marketed by GraphOn.  GraphOn believes that Insignia
> could have only developed such complex technology in

> such a rapid manner by using GraphOn's proprietary and
> confidential information as the foundation for Insignia's
> products.  Such conduct would violate GraphOn's rights
> under two contracts duly executed by Insignia -- The
> Nondisclosure Agreement (Mutual), effective October 23,
> 1996 and the Technology Collaboration Agreement,
> effective as of October 28, 1996 -- in addition to any other
> intellectual property rights possessed by GraphOn under
> federal or state law.

GraphOn also stated:

> However, please be aware that GraphOn will _immediately_
> pursue all legal, contractual and equitable remedies for
> any use or misuse of confidential information or any other
> violation or threatened violation of GraphOn's
> nondisclosure and confidentiality rights.

See Ex. B hereto (emphasis in original).

14.    In a telephone conference call with Insignia personnel on January 30,
1998 ("January 1998 Telephone Call"), GraphOn representatives repeated the
accusations and threats of legal action that are contained in the January 1998 letter.
During the conference call, Walt Keller, the Chief Executive Officer of GraphOn,
stated that the only reason why Insignia possessed a good product was because
Insignia had taken GraphOn's own technology and used it in developing Insignia's
product.

15.    Although Insignia personnel insisted during the telephone conference
that Insignia had not taken any GraphOn technology, GraphOn representatives
continued to assert that Insignia personnel took unspecified technical information
from GraphOn.

16.    GraphOn's new-found allegations against Insignia, which came an

5

entire year after the conclusion of the talks between GraphOn and Insignia, surprised Insignia representatives who had not received <u>any</u> communication from GraphOn alleging a misappropriation or breach prior to the January 1998 Letter and Telephone Call.

17.     Citrix completed the Insignia asset purchase on or about February 5, 1998.

18.     After the asset purchase, GraphOn directed its misappropriation, breach, and infringement assertions to Citrix in Florida and alleged that Citrix misappropriated the proprietary information previously disclosed to Insignia.

19.     Since February 1998, Citrix has on numerous occasions contacted GraphOn and its counsel in an attempt to learn specific details and concrete examples of GraphOn's allegations against Citrix.  GraphOn and its counsel have refused to give Citrix that detailed information.

20.     For months, Citrix has attempted to negotiate with GraphOn an out-of-court dispute resolution protocol, under which GraphOn's allegations could be resolved promptly and finally by a neutral third party.  GraphOn strung that process out for months, but never ultimately agreed to resolve its threatened claims through such a process.

21.     In August 1998, fed up with GraphOn's tactics, Barry Dockswell of Citrix called Walt Keller of GraphOn and told him that Citrix intended to commence a declaratory judgment proceeding to resolve GraphOn's threatened claims in the event that GraphOn refused promptly to resolve them through a binding arbitration

process.  During that call, Mr. Keller repeated GraphOn's unfounded and unsubstantiated threats and assertions against Citrix.

22.     Several days later, Mr. Keller mailed a letter dated August 28, 1998 to Citrix's headquarters located in Fort Lauderdale, Florida ("August 1998 Letter" attached hereto as Exhibit C).  That letter was written in direct response to Mr. Dockswell's statement that Citrix intended imminently to commence a declaratory judgment action.  The transparent purpose of the August 1998 Letter was to create the false impression that no actual controversy existed, in order to provide to GraphOn a pretextual basis upon which to challenge any declaratory judgment action that Citrix might subsequently file.

23.     Notwithstanding the tactical purpose of the August 1998 Letter, a close reading of the letter clearly reveals that GraphOn's threats and allegations against Citrix still exist.

24.     Thereafter, Citrix made a final attempt to resolve this dispute through a binding arbitration process.  GraphOn's recent actions in response to those efforts have now made clear that GraphOn has no intention to enter into any sort of binding dispute resolution procedure to resolve its claims against Citrix.

25.     To the contrary, it has by now become clear that GraphOn wishes to preserve its litigation options indefinitely.  GraphOn's strategy appears to be to lay in wait while Citrix uses the allegedly tainted technology that it purchased from Insignia in order to develop new products.  Then, after Citrix has expended substantial resources and time developing such new products, GraphOn intends to

7

act on its threats and seek to capitalize on Citrix's development efforts.

26.   Citrix has been and continues to be harmed as a consequence of the threats of litigation that GraphOn has deliberately left hanging over Citrix.  Citrix has been and remains hamstrung respecting its ability fully to utilize the allegedly tainted technology that it purchased from Insignia.  The unresolved nature of this controversy with GraphOn has frustrated Citrix's ability to develop and sell new products utilizing that technology.

27.   Citrix seeks a declaratory judgment that Citrix (i) has not infringed any of GraphOn's alleged copyrights in its software, (ii) has not misappropriated any of GraphOn's alleged trade secrets in such software and products, and (iii) has not breached any provision of the agreements with GraphOn.

28.   As a result of GraphOn's conduct, an actual controversy exists regarding the validity, enforcement, and infringement of GraphOn's purported copyrights, misappropriation of GraphOn's purported trade secrets, and breach of the Technology Agreement, and Citrix has a reasonable apprehension of a lawsuit regarding the same.

## COUNT I
## DECLARATORY JUDGMENT
## OF NONINFRINGEMENT OF COPYRIGHT

29.   Citrix realleges and incorporates by reference each and every allegation in paragraphs 1 through 28 above.

30.   GraphOn has alleged that it owns intellectual property rights in copyrighted software and has accused Citrix of infringing GraphOn's rights in such

software.  Citrix is in reasonable apprehension of a lawsuit regarding GraphOn's purported copyrights because of GraphOn's actions, conduct, and threats against Citrix concerning copyrightable subject matter (software), which has created an actual controversy.

31.     Citrix has not infringed and is not now infringing any valid copyright of GraphOn and requests a declaratory judgment to that effect.

**COUNT II**
**DECLARATORY JUDGMENT**
**OF NO APPROPRIATION OF TRADE SECRETS**

32.     Citrix realleges and incorporates by reference each and every allegation in paragraphs 1 through 31 above.

33.     GraphOn has alleged that Citrix misappropriated trade secrets of GraphOn, placing Citrix in reasonable apprehension of a lawsuit regarding those purported trade secrets, which has created an actual controversy.

34.     GraphOn has failed to specify any basis for its assertion that Citrix misappropriated GraphOn's technical and proprietary information.

35.     Citrix has not misappropriated and is not now misappropriating any valid trade secret of GraphOn and requests a declaratory judgment to that effect.

**COUNT III**
**DECLARATORY JUDGMENT**
**OF NO BREACH OF CONTRACT**

36.     Citrix realleges and incorporates by reference each and every allegation in paragraphs 1 through 35 above.

37.     GraphOn has alleged that Citrix breached the Technology Agreement,

9

placing Citrix in reasonable apprehension of a lawsuit regarding the Technology Agreement, which has created an actual controversy.

38.    Citrix has not breached the Technology Agreement and requests a declaratory judgment to that effect.

WHEREFORE, Citrix prays for judgment that this Court:

A.    Finds and declares that:

1.    Citrix has not infringed and is not infringing any valid copyright of GraphOn; and

2.    Citrix has not misappropriated any valid trade secret of GraphOn; and

3.    Citrix has not breached any valid provision of the Technology Agreement.

B.    Citrix be awarded its costs and attorneys' fees in this action.

C.    Citrix be awarded such other and further relief as this Court may deem just and proper.

Dated:  November 23 , 1998

By: _____

Martin J. Alexander, Esq.
HOLLAND & KNIGHT LLP
Attorneys for Plaintiff
625 North Flagler Drive
Suite 700
West Palm Beach, FL  33401
(561) 833-2000

10

Lead Counsel:
Jordan D. Hershman, Esq.
John J. Cotter, Esq.
Carrie Dolmat-Connell, Esq.
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
(617) 248-7000

WPB-109702.3

# ORIGINAL

## TECHNOLOGY COLLABORATION AGREEMENT

THIS AGREEMENT ("Agreement"), effective as of October 28, 1996 (the "Effective Date"). is made and entered into by and between GraphOn Corporation, a California corporation, having a place of business at 150 Harrison Avenue, Campbell, California, 95008, ("GraphOn") and Insignia Solutions Inc., a Delaware corporation, having a place of business at 2200 Lawson Lane, Santa Clara, California 95054 ("Insignia").

WHEREAS, Insignia and GraphOn develop, market and sell various products and technologies and desire to make such technology available to each other in order for new and/or improved technology and products, to be developed; and

WHEREAS, the parties desire to have their respective personnel collaborate to achieve such development, which requires each party to disclose to the other certain existing technology as well as newly-developed technology;

NOW THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

1. **Definitions.**
   1.1 "Attachments" means Attachment 1 ("Product Description") and Attachment 2 ("Designated Persons") which are hereby incorporated into this Agreement.
   1.2 "Confidential Information" means all data or information disclosed hereunder that relates to Discloser's past, present and future research, development, customers or business activities, and is confidential or proprietary to and/or a trade secret of Discloser, including, but not limited to, Source and Documentation.
   1.3 "Derived Program" means. individually and collectively, all computer programs derived from Source by compilation and/or processing on a computer, in machine-readable object code (binary) intermediate code or interpreted form, and all copies or portions thereof. Derived Programs also include all compilations of modified, enhanced and extended versions of the Source. For purposes of this Agreement, Derived Programs shall be construed to be "derivative works" and "compilations", within the meaning of such terms in the Copyright Act (17 U.S.C., §101 et seq.).
   1.4 "Designated Person" means the named personnel who will have access to the Source and Documentation. No one other than the Designated Persons shall have access to the Source and Documentation.
   1.5 "Discloser" means a party disclosing Confidential Information to the other party under this Agreement
   1.6 "Documentation" means any written information related to the internal workings of the Source which is provided by one party to the other.
   1.7 "Product" means software product(s) identified in Attachment 1 hereto, in executable form, and any future versions or releases made during the term hereof, including any additions, modifications, updates and enhancements thereto.
   1.8 "Recipient" means a party receiving Confidential Information from the other party under this Agreement.
   1.9 "Source" means portions of software source code to Product, and which may be provided by one party to the other under this Agreement. Source is provided in human or machine readable form and contains specific algorithms, instructions, plans, routines and the like, for controlling the operation of a central processing unit, or otherwise used by a central processing unit to do a particular job or solve a particular problem. Source may be provided as printed listings of code, or on magnetic media, or by means of telecommunications networks, and includes any documentation and information related to Source. Source also includes any corrections, modifications and enhancements thereto made by either party from time to time.

GraphOn/Insignia

**1.10** "Software" means Source, Derived Programs, other computer programs, and related Documentation owned or distributed by either party.

**1.11** "Use" or "Used" means (i) storing any portion of a Derived Program or Source on a mass storage or CPU memory system of a computer, (ii) transmitting any portion of a Derived Program or Source into a mass storage or CPU memory system of a computer, (iii) processing, compiling, executing or interpreting any Derived Program or Source on a computer, (iv) displaying any portion of a Derived Program or Source in connection with its processing, or (v) utilizing manuals, related materials and generated output of a Derived Program or Source in support thereof.

**2.**     **Description.** The Product descriptions are set forth in Attachment 1 hereto.

**3.**     **Delivery of Source.**

      **3.1**     The parties may find it necessary and desirable to deliver Source, Documentation, or other Confidential Information to each other. However, there is no obligation for either party either to deliver, or to accept an offer of, Source, Documentation, or other Confidential Information.

      **3.2**     Each party will identify its Designated Persons in Attachment 2 attached hereto. Either party may add Designated Persons to Attachment 2 during the term of this Agreement upon the prior written consent of the other party, which shall not be unreasonably withheld or delayed.

**4.**     **Modifications.**

All modifications made by one party to the Source delivered by the other party shall become part of the Source of the original party's Product. Ownership and all rights to such modification shall reside with the owner of the original Source.

**5.**     **Ownership.**

      **5.1**     Each party shall retain all right, title and interest in and to the Source, Documentation, and other Confidential Information provided hereunder and to the Party's own Product or Source which is separable from and contains no portion of the other Party's Software.

      **5.2**     In the event that either party wishes to incorporate the other party's Source or Product into its own Product and/or Source, the parties shall negotiate in good faith for a mutually acceptable distribution agreement.

      **5.3**     **No Ownership Rights Transferred.** No right of ownership or title to any Confidential Information, Source, Derived Programs, copies of the foregoing, or in any portion therein is transferred from one party to the other party under or pursuant to this Agreement and/or as a result of the other party's use or possession of the Source under any circumstances whatsoever.

**6.**     **Limited License.**

      **6.1**     In the event either party should deem it necessary to deliver Source to one another the licenses in 6.2, 6.3, 6.4 will apply. No other rights, expressed or implied, are to be granted except by written agreement.

      **6.2**     **Limited License to Create Derived Programs.**

         (i) Insignia hereby grants to GraphOn a limited, nonexclusive, non-transferable, fully paid, personal license to modify the Source and develop Derived Programs. All Derived Programs, except for GraphOn Software, shall be owned by Insignia and shall be subject to all the terms and conditions of this Agreement. Insignia shall have no warranty obligations with regard to, and shall not be responsible for, any maintenance or support of Source which has been modified by GraphOn, until such time as Insignia chooses to incorporate such modified Source into a commercially available version of Insignia Product.

         (ii) GraphOn hereby grants to Insignia a limited, nonexclusive, non-transferable, fully paid, personal license to modify the Source and develop Derived Programs. All Derived Programs,

except for Insignia Software, shall be owned by GraphOn and shall be subject to all the terms and conditions of this Agreement. GraphOn shall have no warranty obligations with regard to, and shall not be responsible for, any maintenance or support of Source which has been modified by Insignia, until such time as GraphOn chooses to incorporate such modified Source into a commercially available version of the GraphOn Product.

**6.3 No License to Distribute.**
(i) No license is granted by Insignia to GraphOn for distribution of any Software derived from the Source hereunder. Such license, if granted, will be under the provisions as set forth in a separate agreement.

(ii) No license is granted by GraphOn to Insignia for distribution of any Software derived from the Source hereunder. Such license, if granted, will be under the provisions as set forth in a separate agreement.

**7. Warranties and Indemnification.**

**7.1 GraphOn Warranties.** GraphOn warrants and represents that: (i) GraphOn has the full power, right and authority to enter into this Agreement and to carry out its obligations under this Agreement and to grant the rights granted to Insignia hereunder; and (ii) to the best of GraphOn's knowledge, the GraphOn Product and its use or distribution does not infringe on any patents, copyrights, trademark or other third party intellectual property rights, and there are no suits or proceedings pending or threatened which allege that the GraphOn Software or use thereof infringes upon such patents, copyrights, trademarks or other third intellectual property right.

**7.2 Insignia Warranties.** Insignia warrants and represents that: (i) Insignia has the full power, right and authority to enter into this Agreement and to carry out its obligations under this Agreement and to grant the rights granted to GraphOn hereunder; and (ii) to the best of Insignia's knowledge, the Insignia Product and its use or distribution does not infringe on any patents, copyrights, trademark or other third party intellectual property right, and there are no suits or proceedings pending or threatened which allege that the Insignia Product or use thereof infringes upon such patents, copyrights, trademarks or other third intellectual property right.

**7.3 Disclaimer.** THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF, AND EACH PARTY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**7.4 Insignia's Indemnification.** Insignia will defend, indemnify, and hold GraphOn harmless from any claim, suit or proceeding brought against GraphOn to the extent such claim, suit or proceeding is based on a claim that the Insignia Software licensed to GraphOn, excluding any GraphOn Software, constitutes infringement of any: (i) issued patent, or (ii) registered copyright, provided that GraphOn: (i) promptly informs Insignia thereof, and furnishes to Insignia a copy of each communication, notice or other action relating to the alleged infringement, (ii) gives Insignia the authority, information and assistance (at Insignia's sole expense) necessary to settle, compromise or litigate such suit or proceeding, and (iii) does not settle, or agree to settle, any such suit without the express written permission of Insignia.

**7.5 GraphOn's Indemnification.** GraphOn will defend, indemnify, and hold Insignia harmless from any claim, suit or proceeding brought against Insignia to the extent such claim, suit or proceeding is based on a claim that the GraphOn Software licensed to Insignia constitutes infringement of any: (i) issued patent, or (ii) registered copyright, provided that Insignia: (i) promptly informs GraphOn thereof, and furnishes to GraphOn a copy of each communication, notice or other action relating to the alleged infringement, (ii) gives GraphOn the authority, information and assistance (at GraphOn's sole expense) necessary to settle, compromise or litigate such suit or proceeding, and (iii) does not settle, or agree to settle, any such suit without the express written permission of GraphOn.

**7.6 Exceptions.** A party hereunder will not be obligated to defend or be liable for costs and damages if infringement, or a claim of infringement, arises out of compliance with the

indemnified party's specifications, combination of the indemnified party's or third party equipment or software in or with Source or Product, as the case may be (unless such infringement would result regardless of the combination of such equipment or software).

**7.7 Limitation.** THE FOREGOING STATES THE ENTIRE LIABILITY OF EACH PARTY FOR PATENT, COPYRIGHT, OR OTHER INTELLECTUAL PROPERTY INFRINGEMENT BY THE SOURCE, PRODUCT OR SOFTWARE.

**7.8 Consequential Damages.** THE PARTIES AGREE THAT, EXCEPT AS PROVIDED IN SECTION 7, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES, HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, ARISING OUT OF THIS AGREEMENT.

## 8. Confidential Information

**8.1 Disclosure of Information.** Each party agrees that it may be desirable to disclose to the other party Confidential Information and/or materials containing Confidential Information. Confidential Information also may include confidential, proprietary and/or trade secret information that is owned by third parties, which third parties have granted sufficient rights to a party to permit that party to provide such Confidential Information to the other party hereunder. For purposes of this Section, references to either party shall include any applicable third party owner/licensers of Confidential Information.

**8.2 Use of Confidential Information.** Except as otherwise provided in this Agreement, the parties provide Confidential Information hereunder solely for the purposes of facilitating the relationship described in this Agreement, and the effectuation of the licenses provided hereunder, and each party agrees: (i) not to use any Confidential Information of the other party for any purpose other than the foregoing, and (ii) to limits its disclosure of Confidential Information to its employees who have a need to know such Confidential Information for purposes of this Agreement. Without limiting the foregoing, Recipient agrees to treat Confidential Information of Discloser with at least the same degree of care and protection that it uses with its own Confidential Information and trade secrets.

**8.3 Exclusions.** Recipient shall have no obligation as to Confidential Information that: (i) is not provided in a tangible form and labeled as confidential or proprietary, or if provided orally reduced to writing, designated as confidential or proprietary, and provided to Recipient within ten (10) days thereafter, (ii) is known to Recipient at the time of disclosure, as evidenced by documentation in Recipient's possession at the time of such disclosure, (iii) Recipient independently develops, provided Recipient can show that such development was accomplished by or for Recipient without the use of or any reference to Confidential Information, (iv) becomes rightfully known to Recipient from another source without confidentiality restrictions on subsequent disclosure or use, (v) is or becomes part of the public domain through no wrongful act of Recipient, (vi) Recipient discloses pursuant to any competently authorized judicial or governmental request, requirement or order, provided that Recipient takes reasonable steps to give Discloser sufficient prior notice to contest such request. requirement or order, or (vii) Discloser furnishes to a third party without a similar confidentiality restriction on such third party.

**8.4 Injunctive Relief.** Both parties acknowledge and agree that in the event of an unauthorized use, reproduction, distribution or disclosure of one party's Confidential Information by the other party, the first party may not have an adequate remedy at law, and therefore, injunctive or other relief would be appropriate to restrain such use, reproduction, distribution or disclosure. threatened or actual.

**8.5 Disposal of Media.** Before disposition of any media or storage apparatus containing Confidential Information of the other party, Recipient will ensure that it has completely erased or otherwise destroyed any such Confidential Information contained by such media or stored in such apparatus.

GraphOn/Insignia

## 9.  Term and Termination

**9.1  Term.**  This Agreement shall begin as of the Effective Date, and shall continue in force (unless terminated earlier pursuant to Section 9.2 below) for a period of one (1) year.

**9.2  Termination.**  Either party may terminate the licenses granted in Section 6 above, at any time and for any reason or no reason. Upon such termination of the licenses or expiration of this Agreement, each party shall, with respect to Source for which the license has terminated or expired, within ten (10) calendar days of notice of termination, deliver to the other party all documentation containing the other party's Source, all work in progress on the other party's Source, and shall render unusable all the other party's Source placed in storage apparatus, and provide the other party with written verification of such actions.

## 10.  General Provisions

**10.1  Governing Law.**  This Agreement shall be governed by and interpreted under the laws of the State of California without reference to conflict of laws principles.

**10.2  Copyrights.**

Each party acknowledges the other party's representation that their respective Software is copyrighted by them. Each party agrees to maintain, duplicate and respect the copyright and other proprietary rights notices in each other party's Software in connection with any activity contemplated hereunder, including, but not limited to, the making of archival copies of each other party's Software. Any copyright notice used in connection with each party's Software shall not be deemed to imply that any part of that party's Software has been published, has been placed in public domain, or has removed the obligation to hold each party's Software in confidence pursuant to Section 8 above.

**10.3  Trademarks.**

**a)  Insignia Trademarks.**  GraphOn acknowledges Insignia's representations that the trademarks and trade names under which Insignia markets its products are the exclusive property of Insignia or its suppliers and GraphOn acknowledges that this Agreement gives GraphOn no rights therein.

**b)  GraphOn Trademarks.**  Insignia acknowledges GraphOn's representations that the trademarks and trade names under which GraphOn markets its products are the exclusive property of GraphOn or its suppliers and Insignia acknowledges that this Agreement gives Insignia no rights therein.

**10.4  Force Majeure.**  Neither party shall be liable for any loss, damage or penalty resulting from delays or failures in performance resulting from acts of God or other causes beyond its control.

**10.5  Independent Contractors.**  Each party acknowledges that the relationship between the parties pursuant to this Agreement is that of independent contractors. No provision of this Agreement shall be construed to (i) constitute the parties as partners, joint venturers or participants in a joint undertaking, or (ii) give either party the power to direct and control the day-to-day activities to the other.

**10.6  Assignment.**  Neither this Agreement nor any interest herein may be assigned, in whole or in part, by either party without the prior written consent of the other party, except that without securing such prior consent, either party shall have the right to assign this Agreement and the obligations hereunder to any successor of such party by way of assigning party's acquisition of a third party or merger or consolidation or the acquisition of substantially all of the business and assets of the assigning party relating to the Agreement; provided, however, that such successor entity shall not be a competitor of the non-assigning party. This right shall be retained provided that such successor shall expressly assume all of the obligations and liabilities of the assigning party liable and responsible to the other party hereunder, and that the assigning party shall remain liable and responsible to the other party hereto for the performance and observance of all such obligations.

**10.7 Severability and Waiver.** If any provision of this Agreement is held to be unenforceable, the remaining provisions shall, to the extent practicable, continue in full force and effect, and the parties will negotiate in good faith a suitable replacement provision which most nearly reflects the parties' original intent. The waiver of any breach or default shall not constitute a waiver of any other right hereunder or any subsequent breach or default

**10.8 Notices.** Any required notices hereunder shall be given in writing at the addresses of each party set forth below, or to such other address as either party may substitute by written notice to the other in the manner contemplated herein, and shall be deemed served when delivered or, if delivery is not accomplished by reason or some fault of the addressee, when tendered:

**If to Insignia:**
William McCarthy
Vice President, OEM and Strategic Relations
Insignia Solutions Inc.
2200 Lawson Lane
Santa Clara, CA 95054

**With a copy to:**
Richard Noling
Sr. Vice President & Chief Financial Officer
Insignia Solutions Inc.
2200 Lawson Lane
Santa Clara, CA 95054

**If to GraphOn:**
Robin Ford, Vice President of Sales and Marketing
GraphOn Corporation
150 Harrison Avenue
Campbell, CA 95008

**10.9 Confidentiality of Agreement.** Each party agrees that the terms and conditions of this Agreement shall be treated as Confidential Information and shall not be disclosed by either party without the prior written consent of the other party except: (i) as required by applicable disclosure laws; (ii) to accountants, banks, financing sources, lawyers and related parties; or (iii) in connection with the enforcement of the Agreement.

**10.10 Survival.** The obligations of the parties under Sections 5, 7 and 8 shall survive and continue after the expiration or termination of this Agreement or any license granted hereunder.

**10.11 Attorneys' Fees.** In the event of any arbitration or litigation arising out of this Agreement, the prevailing party shall be awarded its reasonable costs and attorneys' fees.

**10.12 Entire Agreement.** This Agreement constitutes the entire and exclusive Agreement between the parties hereto with respect to the subject matter hereof. No modification to this Agreement, nor any waiver of any rights, shall be effective unless assented to in writing by the party to be charged.

**10.13 Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the undersigned are duly authorized to execute this Agreement on behalf of Insignia and GraphOn, as applicable.

GraphOn Corporation

By: _W. Ker_

Print Name: _Walt Keller_

Title: _President_

Date: _10/4/96_

Insignia Solutions Inc.

By: _Rich M. N._

Print Name: _Richard M. Noling_

Title: _Sr. Vice President & Chief Financial Officer_

Date: _15 November, 1996_

# ATTACHMENT 1
## Product Description

Insignia's Java X client for NTRIGUE

GraphOn's GoGlobal Java client

Other Products or technologies may be added to this Attachment 1 by mutual agreement between the parties.

# ATTACHMENT 2
## Designated Persons

GraphOn Facility: Campbell, California
Designated personnel who will have access to the Source and Documentation:

1.    Name: _____
      Title: _____

2.    Name: _____
      Title: _____

3.    Name: _____
      Title: _____

Insignia Facility: Santa Clara, California

1.    Name: _____
      Title: _____

2.    Name: _____
      Title: _____

3.    Name: _____
      Title: _____

Insignia Facility: High Wycombe, England

1.    Name: _____
      Title: _____

2.    Name: _____
      Title: _____

3.    Name: _____
      Title: _____

GraphOn/Insignia





TELEPHONE: (415) 442-0900
FACSIMILE: (415) 442-1010
WRITER'S DIRECT DIAL:
(415) 496-2887

January 26, 1998

ATTORNEY/CLIENT PRIVILEGED
WORK-PRODUCT PROTECTED

**VIA FEDERAL EXPRESS**

Richard Noling
President and Chief Executive Officer
Insignia Solutions Inc.
2200 Lawson Lane
Santa Clara, CA 95054

Re: GraphOn Corp.: Confidentiality Obligations

Dear Mr. Noling:

As you know, GraphOn Corp. was the first developer of a thin client X server product. GraphOn has over 13 years experience in the computer display market, with over six years of providing the fastest thin client X solutions. GraphOn's thin client X solution uses a three-tier client/server approach. The first tier is the UNIX application that the user needs to use — for example, Framemaker. The second tier is the GraphOn X server (GlobalHost) which itself runs on a UNIX system. The third tier is the desktop client run in a personal computer or network computer. The desktop clients are based on GraphOn's proprietary RapidX™ protocol and provide the user with the ability to provide fast access to UNIX/X applications over any connection, whether LAN (local area network), the Internet, or even phone lines and modems.

GraphOn's remarkable achievements were a direct result of its commitment and substantial investment in this technology. GraphOn's success led to Insignia considering either a collaborative arrangement with or an acquisition of GraphOn.

As a key predicate to those discussions, Insignia specifically agreed to nondisclosure and confidentiality obligations regarding all information obtained during the negotiations and due diligence investigation. As you know, based on this agreement, Insignia employees, representatives and advisors were provided and exposed to highly confidential and proprietary information, including information related to financial, business, customer proposals, technical (e.g. source code) and other related information concerning GraphOn's business (collectively, "Evaluation Materials"). In particular, Insignia's engineers extensively reviewed GraphOn's highly proprietary, sensitive technical information, including GraphOn's source code, which is the bedrock for any high technology company.

EXHIBIT "B"



Richard Noling                                                          January 26, 1998
                                                                              Page 2

        The Evaluation Materials were provided by GraphOn in reliance upon Insignia's repeated
written and verbal assurances that such information would be used solely for evaluating and
effecting a possible collaboration with or acquisition of GraphOn and that such information would
not be used by Insignia or disclosed to any third party for any other purpose, and such
information would be held in confidence in accordance with the agreement.  As you will
remember, both GraphOn and Insignia conducted the evaluations and discussions with the highest
degree of sensitivity to the confidential nature of the information being exchanged and the
potential for use and misuse of such information.  GraphOn had every reason to expect that
Insignia would honor its commitment to strictly maintain the confidentiality of the Evaluation
Materials and would prevent their use and misuse by Insignia's agents or third parties.

        Despite Insignia's agreement and assurances to GraphOn, it recently has come to
GraphOn's attention that Insignia has incorporated into its existing and potential products critical
features strikingly similar to those sold and marketed by GraphOn.  GraphOn believes that
Insignia could have only developed such complex technology in such a rapid manner by using
GraphOn's proprietary and confidential information as the foundation for Insignia's products.
Such conduct would violate GraphOn's rights under two contracts duly executed by Insignia —
The Nondisclosure Agreement (Mutual), effective October 23, 1996 and the Technology
Collaboration Agreement, effective as of October 28, 1996 — in addition to any other intellectual
property rights possessed by GraphOn under federal and/or state law.

        Accordingly, we respectfully request that Insignia (including its directors, officers,
employees, representatives and advisors):

        1.        Return all documents and other tangible objects containing or representing
information regarding GraphOn's business and all copies thereof, including information provided
during the technical review conducted by William Roberts at GraphOn's premises and made
available to Insignia in connection with the proposed collaboration or acquisition;

        2.        Return all documents and other tangible objects (e.g. source code)
containing any information (including any formula, pattern, compilation, program, device,
method, technique, or process) copied or derived, in whole or in part, from the Evaluation
Materials provided to Insignia;

        3.        Refrain from disclosing any confidential, proprietary and/or non-public
information acquired in connection with the evaluations and negotiations;

        4.        Refrain from disclosing either the fact that discussions or negotiations took
place concerning a possible transaction between GraphOn and Insignia and any of the proposed
terms, conditions or other facts or information with respect to such proposed transaction; and

PALLIB1\KYS\136718\.01



Richard Noling

January 26, 1998
Page 3

5.   Refrain from using the information contained in the Evaluation Materials or otherwise obtained during the evaluation and negotiation process in any way in conducting the business of Insignia.

We trust that Insignia shares GraphOn's interest in ensuring compliance with the foregoing demands and in maintaining the spirit of confidentiality that allowed the evaluations and discussions to take place. However, please be aware that GraphOn will immediately pursue all legal, contractual and equitable remedies for any use or misuse of confidential information or any other violation or threatened violation of GraphOn's non-disclosure and confidentiality rights.

We would appreciate a written confirmation of your compliance with all of the terms of this letter.

The foregoing demands are made with full reservation of all rights and remedies in law or equity.

If you have any questions or would like to discuss this matter directly, please feel free to contact me at (415) 442-0900.

Very truly yours,

Marty S. Kingston

cc: Walter Keller

PALI81:KERIARTLRL01



**GraphOn**

GraphOn Corporation • 150 Harrison Avenue. Campbell, CA 95008 • 408-370-4080 • FAX: 408-370-5047 • http://www.graphon.com

August 28, 1998

Mr. Barry Dockswell
Vice President, Business Development
Citrix Systems
6400 NW Sixth Way
Fort Lauderdale, FL 33309

Dear Barry:

This letter is in response to your telephone call to me of earlier today. In that call you mentioned the possibility of Citrix bringing a declaratory judgement action against GraphOn in connection with the proprietary information that we disclosed to Insignia Solutions prior to the acquisition of that company by Citrix. I was a little surprised by your suggestion that Citrix might sue GraphOn. We understand that such a proceeding would be appropriate if we had previously threatened to sue Citrix, which we most emphatically have not done.

GraphOn has notified Citrix of the confidential nature of the information disclosed to Insignia Solutions; based upon rumors we have heard in the marketplace that Citrix may be developing a product similar to what we disclosed. We are quick to acknowledge, however, that if Citrix has developed its product independently, without using our confidential information, GraphOn would have no basis for bringing a lawsuit, and clearly does not intend to do so. As we sit here today, GraphOn has no information, one way or the other, with respect to whatever product Citrix ultimately may bring to market.

We still stand ready to implement a confidential disclosure of both our technology and yours to a mutually agreeable third party expert for analysis under complete confidentiality. The expert could advise both sides, without revealing any confidences of either party, as to the apparent presence or absence in Citrix's product of what was disclosed to Insignia. If there is no similarity between what we disclosed and what Citrix may be doing, or if the expert concludes that Citrix developed its product without reference to our confidential disclosures, there is no problem for either company. We are also agreeable to having the expert's report available to either company, for whatever evidentiary value it might have, should there ever be a dispute between the two companies over this issue. What we are not willing to do is accord this review process the status of a formal arbitration until we know whether there is something to arbitrate.

We hope that this matter can be resolved, and stand ready to discuss it with you and your lawyers.

Sincerely,

Walt Keller
President

wn



EXHIBIT "C"

# 98-7322   CIVIL COVER SHEET   CIV-LENARD



The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

CITRIX SYSTEMS, INC.

**DEFENDANTS**

GRAPHON CORPORATION

MAGISTRATE JUDGE

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

0-98 CV-7322-JAL/LRJ

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** ____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

see attached

ATTORNEYS (IF KNOWN)

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Case Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

17 U.S.C. §§ 501 et seq. 28 U.S.C. §§ 2201 and 2202
Declaratory Judgment action

**IVa.** 5 days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 81 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agriculture Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Management Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor/Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Employee Ret. Inc. Security Act | ☐ 871 IRS-Third Party 26 USC 7809 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions * A or B |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

- ☒ 1. Original Proceeding
- ☐ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated
- ☐ 5. Transferred from another district (specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**

CHECK IF THIS IS A
☐ UNDER F.R.C.P. 23

**CLASS ACTION** **DEMAND $**

CHECK YES only if demanded in complaint.
**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):

JUDGE ____   DOCKET NUMBER ____

**DATE**
11-23-98

SIGNATURE OF ATTORNEY OF RECORD

_[signature]_   500460

UNITED STATES DISTRICT COURT
S/F I-2
REV. 2/94

FOR OFFICE USE ONLY: Receipt No. 515257
Amount: ____
Date Paid: 11-23-98
M/fp: ____

Lead Counsel:
Jordan D. Hershman, Esq.
John J. Cotter, Esq.
Carrie Dolmat-Connell, Esq.
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
(617) 248-7000

Local Counsel:
Martin J. Alexander, Esq.
HOLLAND & KNIGHT LLP
625 North Flagler Drive
Suite 700
West Palm Beach, Florida 33401
(561) 833-2000


WPB-109702.3